IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01019-PAB-BNB

TELITHA PETERSON-HOOKS,

     Plaintiff,

v.

FIRST INTEGRAL RECOVERY, LLC,

     Defendant.

---

## ORDER

---

     This matter is before the Court on the Motion for Default Judgment [Docket No. 26] filed by plaintiff Telitha Peterson-Hooks.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND

     On April 16, 2012, plaintiff filed this case against defendant First Integral Recovery, LLC, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692 *et seq*., and the Colorado Fair Debt Collection Practices Act ("CFDCPA"), Colo. Rev. Stat. § 12-14-101 *et seq*.  In her complaint, plaintiff alleges that she is a natural person who is obligated to pay a debt arising out of a transaction for personal, family, or household goods.  Docket No. 1 at 2, ¶¶ 10-12.  She avers that defendant is a debt collector as that term is defined in the aforementioned statutes.  *Id*. at 2, ¶¶ 7-8.  She further claims that defendant, through its collectors "Mr. Tatty" and "Mr. Carter," harassed her by placing numerous telephone calls to her work and cellular

phones, sometimes calling her three or more times in a day and more than twenty times in a month. *Id*. at 3, ¶¶ 15-17. Additionally, plaintiff claims that defendant falsely represented itself as the Internal Revenue Service ("IRS") and told plaintiff's co-workers that the calls were from a "legal department," suggesting she had legal trouble. *Id*. ¶¶ 18, 22. Moreover, Mr. Carter falsely represented that defendant would initiate "legal proceedings" against plaintiff and she would be subject to criminal charges for "check fraud" if she did not make immediate payments on her debt. *Id*. at 4, ¶ 31. Plaintiff asserts that defendant has never registered with the Colorado Attorney General's Office ("AG") as a debt collector and despite all its threats to do so, has not initiated a civil or criminal case against her. *Id*. ¶ 33. Defendant has not responded to the complaint or otherwise appeared before the Court in this case.

On September 18, 2012, plaintiff moved for entry of default [Docket No. 22] pursuant to Federal Rule of Civil Procedure 55(a). The Clerk of the Court entered default against defendant the following day. Docket No. 24. On November 8, 2012, plaintiff moved for entry of default judgment. Docket No. 26. Plaintiff seeks $8,347.00 in damages, comprising of $2,000.00 in statutory damages for violations of the FDCPA and the CFDCPA, $5,952.00 in attorney's fees, and $395.00 in court costs. Docket No. 26 at 7-8. Defendant has not responded to plaintiff's motion for default judgment.

## II. DISCUSSION

### A. Default Judgment

In order to obtain a judgment by default, a party must follow the two-step process described in Federal Rule of Civil Procedure 55. First, she must seek an entry of

default from the Clerk of the Court under Rule 55(a).  Second, after default has been

entered by the Clerk, the party must seek default judgment according to the strictures of

Rule 55(b).  *See Williams v. Smithson*, 1995 WL 365988, at *1 (10th Cir. June 20,

1995) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "'committed to the district court's sound

discretion.'"  *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation

omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor

resolution of disputes on their merits."  *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir.

1991) (quotation marks and citations omitted).  "The default judgment must normally be

viewed as available only when the adversary process has been halted because of an

essentially unresponsive party."  *Id*.  It serves to protect a plaintiff against "interminable

delay and continued uncertainty as to his rights."  *Id*. at 733.  When "ruling on a motion

for default judgment, the court may rely on detailed affidavits or documentary evidence

to determine the appropriate sum for the default judgment."  *Seme v. E & H Prof'l Sec.

Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19,

2010).

A party may not simply sit out the litigation without consequence.  *See Cessna

Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir.

1983) ("[A] workable system of justice requires that litigants not be free to appear at

their pleasure.  We therefore must hold parties and their attorneys to a reasonably high

standard of diligence in observing the courts' rules of procedure.  The threat of

judgment by default serves as an incentive to meet this standard.").  One such

3

consequence is that, upon the entry of default against defendants, the well-pleaded allegations in the complaint are deemed admitted.  *See Olcott*, 327 F.3d at 1125; *see also* 10A CHARLES WRIGHT, ARTHUR MILLER & MARY KANE, FED. PRAC. & PROC. § 2688 (3d ed. 2010).

"Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  10A WRIGHT & MILLER § 2688, at 63.  A court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation marks and citation omitted).

In this case, the Clerk of Court entered default against defendant on September 19, 2012 [Docket No. 24].  Accordingly, the Court accepts the well-pleaded facts in plaintiff's complaint as true.  Specifically, the Court accepts as true plaintiff's allegations that (1) she is a consumer and defendant is a debt collector as those terms are defined by the FDCPA and the CFDCPA, Docket No. 1 at 2, ¶¶ 5-12; (2) defendant contacted

4

plaintiff between October 2011 and March 2012 in an attempt to collect on her debt, *id*. at ¶ 13; (3) defendant placed numerous harassing phone calls to plaintiff at her home and place of work, *id*. at 3, ¶¶ 15-17; (4) in the course of attempting to collect her debt, defendant told plaintiff that it was the IRS or a "legal department," *id*. ¶¶ 18-22, and that it would file criminal charges against her for "check fraud" if she did not make immediate payments, *id*. at 4, ¶ 31; and (5) defendant never registered with the Colorado AG as a debt collector.  *Id*. at ¶ 28.  Taking these allegations as true, the Court next determines whether these facts "constitute a legitimate cause of action" entitling plaintiff to default judgment.  10A WRIGHT & MILLER § 2688, at 63.

### B.  FDCPA Violations

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Plaintiff claims that defendant violated 15 U.S.C. §§ 1692b, 1692c, 1692d, 1692e, and 16292f.  Plaintiff seeks $1,000.00 in statutory damages for defendant's violations.[1]  Docket No. 26 at 4; Docket No. 1 at 14.

Plaintiff brings a claim pursuant to § 1692b(2), which prohibits debt collectors "stat[ing] that such consumer owes any debt" when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer.  15 U.S.C. § 1692b(2); *see also* Colo. Rev. Stat. §§ 12-14-104(1)(b).  Under

---

[1]Although plaintiff originally also sought actual damages, Docket No. 1 at 14, it appears she has now abandoned that request.  Docket No. 26 at 7.

the FDCPA, "location information" is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7); Colo. Rev. Stat. § 12-14-103(9).  Because plaintiff does not allege that defendant's communications with her co-workers were for the "purpose of acquiring location information," she does not clearly state a violation of § 1692b(2).  *See Ayala v. Creditors Specialty Serv., Inc.*, 2012 WL 5198482, at *5 (E.D. Cal. Oct. 19, 2012) (noting that communication must be to "acquire location information").

Next, plaintiff alleges that defendant violated 15 U.S.C. §§ 1692c(a)(2), (b), and (c).  Docket No. 1 at 6.  Plaintiff asserts that defendant contacted her about the debt even after defendant received a cease and desist letter stating that plaintiff had retained an attorney.  15 U.S.C. §§ 1692c(a)(2), (c).  Taking plaintiff's well pleaded facts as true, the Court finds that plaintiff has established violations of 15 U.S.C. §§ 1692c(a)(2), (c).  However, plaintiff does not establish a violation of § 1692c(b) because she does not allege that defendant discussed her debt with her employer, but rather states that she had to discuss her debt problems with her employer because of defendant's persistent phone calls.  Docket No. 1 at 3, ¶¶ 22-25.

Plaintiff alleges that defendant violated 15 U.S.C. §§ 1692d, (5).  Docket No. 1 at 6-7.  Plaintiff asserts that defendant sometimes called her up to five times a day and up to twenty times in a month in order to harass her until she paid the debt.  *See* 15 U.S.C.

§§ 1692d,[2] (5).[3]  Taking plaintiff's well pleaded facts as true, the Court finds that plaintiff

has established violations of 15 U.S.C. §§ 1692d, (5).

Plaintiff alleges that defendant violated 15 U.S.C. §§ 1692e, (1), (5), (7), and

(10).  Docket No. 1 at 7-9.  Plaintiff claims that defendant falsely represented to her co-

workers that the calls were from a legal department, *see* 15 U.S.C. §§ 1692e,[4]

1692e(10),[5] that defendant falsely stated it was affiliated with the IRS, 15 U.S.C.

§ 1692e(1),[6] and that defendant falsely threatened to file criminal charges against her

for check fraud.  15 U.S.C. §§ 1692e(5),[7] 1692e(7).[8]  Taking plaintiff's well pleaded

facts as true, the Court finds that plaintiff has established violations of 15 U.S.C. §§

1692e, (1), (5), (7), and (10).

---

[2] 15 U.S.C. § 1692d prohibits debt collectors from utilizing collection practices of which "the natural consequence . . . is to harass, oppress, or abuse any person in connection with the collection of a debt."

[3] 15 U.S.C. § 1692d(5) prohibits debt collectors from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

[4] "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.

[5] 15 U.S.C. § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

[6] 15 U.S.C. § 1692e(1) prohibits the "false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State."

[7] 15 U.S.C. § 1692e(5) prohibits "threat[s] to take any action that cannot legally be taken or that is not intended to be taken."

[8] 15 U.S.C. § 1692e(7) prohibits the "false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."

Finally, plaintiff brings a claim pursuant to § 1692f, which states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. However, plaintiff's allegations do not clearly establish that defendant's actions were "unfair or unconscionable." *See, e.g., LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1195 (11th Cir. 2010) (remanding case because a determination of whether defendant's letter stating "[i]f we are unable to resolve this issue within 35 days we may refer this matter to an attorney in your area for legal consideration" constituted an "unfair or unconscionable" means to collect a debt under § 1692f presents a jury question). Similarly, section 1692f(1) prohibits "unfair or unconscionable means to collect or attempt to collect any debt . . . [consisting of t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Because plaintiff does not allege that defendant sought to collect interest or any other fee that was not authorized by her debt agreement, she does not establish a violation of § 1692f(1). *See Maynard v. Cannon*, 401 F. App'x 389, 397-98 (10th Cir. 2010).

In summary, the Court finds that plaintiff has established that defendant violated various provisions of the FDCPA in §§ 1692c, 1692d, and 1692e. Given that plaintiff has sufficiently established violations of the FDCPA, the Court will now determine the amount of plaintiff's statutory damages award.

The FDCPA provides for statutory damages in an amount "as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(2)(A). The FDCPA sets a statutory maximum amount of damages at $1,000 per proceeding. *See Wright v. Fin.*

*Serv. of Norwalk, Inc.*, 22 F.3d 647, 650-52 (6th Cir.1994); *Goodmann v. People's Bank*, 209 F. App'x 111, 114 (3d Cir. 2006). "All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) (citing *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997)). In light of the foregoing, although plaintiff has established that defendant violated several provisions of the FDCPA, she can only recover up to $1,000.00 in statutory damages. *See Goodmann*, 209 F. App'x at 114; *Santacruz v. Standley & Assoc., LLC*, No. 10-cv-00623-CMA-CBS, 2011 WL 1043338, at *7 (D. Colo. Mar. 17, 2011).

Pursuant to 15 U.S.C. § 1692k(b)(1), to determine the amount of statutory damages, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S.Ct. 1605, 1609 (2010) (the court "must" consider the provisions of Section 1692k(b) in awarding statutory "additional damages").

In this case, defendant violated numerous provisions of the FDCPA. In addition, defendant's violations were persistent. Defendant called plaintiff at her home and place of work up to twenty times over the course of a month. Defendant also continued to contact plaintiff, despite its receipt of a cease and desist letter. Furthermore, defendant falsely represented that it would commence civil or criminal proceedings against plaintiff, falsely disclosed that it was affiliated with the IRS, and performed these actions

even though it was not registered with the AG's office as required by statute.  Based on the foregoing, the Court finds that the frequency, persistent nature, and willfulness of defendant's noncompliance with the FDCPA justifies an award of $1,000 in statutory damages against defendant.  *See, e.g., Harding v. Check Processing, LLC*, 2011 WL 1097642, at *3 (N.D. Ohio, March 22, 2011) (awarding maximum statutory damages because defendant falsely asserted that plaintiff had committed a crime and that she would be jailed if she did not pay).

### C.   Colorado FDCPA Violations

Like the federal statute, the CFDCPA shares the "remedial purpose of protecting consumers against debt collection practices that take advantage of . . . persons who receive a debt collection communication." *Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 773 (Colo. 2008).  The CFDCPA allows individuals to bring actions against debt collectors who violate its provisions within one year of the violations.  Colo. Rev. Stat. §§ 12-14-113(1), (4).  Pursuant to the CFDCPA, plaintiffs can recover up to one thousand dollars in statutory damages for violations of its provisions.  Colo. Rev. Stat. § 12-14-113(1)(b)(I).

 Because Congress did not intend for the FDCPA to preempt state regulation of debt collection practices, states may provide greater protection to consumers than those available under the FDCPA.  15 U.S.C. § 1692n ("For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter").  However, individuals may not recover damages under the CFDCPA if they recover damages for

violations of "like provision[s]" under the FDCPA.  Colo. Rev. Stat. § 12-14-113(6).[9]

Because the CFDCPA is patterned on the FDCPA, the Court will construe the term "like

provision" to mean an overlapping or equivalent provision contained in both statutes.

*See Udis v. Universal Commc'ns Co.*, 56 P.3d 1177, 1183 (Colo. App. 2002)

(construing Colo. Rev. Stat. § 12-14-107 in light of 15 U.S.C. § 1692e(10) to determine

whether communication through a telegram format is deceptive under the CFDCPA);

*Flood*, 176 P.3d at 777 (relying on cases construing 15 U.S.C. § 1692c(b) to determine

whether the use of an automated mailing system violates Colo. Rev. Stat. § 12-14-

105(2), which prohibits debt collectors from discussing a plaintiff's debt with a third

party).  By contrast, provisions of the CFDCPA that provide additional or different

protection than is available under the FDCPA are not "like provisions."  *See, e.g.,*

*Khosroabadi v. N. Shore Agency*, 439 F. Supp. 2d 1118, 1125 (S.D. Cal. 2006) (noting

that a debt collector did not violate the FDCPA when its collection letter complied with

the requirements of the FDCPA, but did not include additional disclosures required by

California's Rosenthal Fair Debt Collection Practices Act).  Although plaintiff here

asserts that defendants performed actions that would violate both the FDCPA and the

CFDCPA, the Court will limit its inquiry into her CFDCPA claims to non-overlapping

violations.

Plaintiff alleges that Mr. Tatty falsely represented that he was a "legal specialist,"

Docket No. 1 at 4, ¶ 30, in violation of the CFDCPA.  *See* Colo. Rev. Stat. § 12-14-

---

[9]Section 113(6) states, "[t]he policy of this state is not to award double damages under this article and the federal 'Fair Debt Collection Practices Act,' 15 U.S.C. sec. 1692 et seq.  No damages under this section shall be recovered if damages are recovered for a like provision of said federal act."  Colo. Rev. Stat. § 12-14-113(6).

107(1)(c) (prohibiting debt collectors from falsely representing that "any individual is an attorney or that any communication is from an attorney").  In addition, plaintiff claims that defendant performed debt collection activities in the State of Colorado without first obtaining a license.  Colo. Rev. Stat. § 12-14-115(a) (noting that it is unlawful to operate as a collection agency without obtaining a valid license in Colorado).  Taking these allegations as true, the Court finds that plaintiff has established violations of these non-overlapping provisions of the CFDCPA.  *See Olcott*, 327 F.3d at 1125.

Pursuant to § 12-14-113(2)(a), courts determine the amount of statutory damages available for violations of the CFDCPA by considering "the frequency and persistence of noncompliance by the debt collector or collection agency, the nature of such noncompliance, and the extent to which such noncompliance was intentional." Colo. Rev. Stat. § 12-14-113(2)(a).  As discussed above, defendant's noncompliance with the CFDCPA was persistent, repetitive, and suggests a willfulness or total indifference to the requirements of the CFDCPA.  Based on these facts, the Court finds that plaintiff is entitled to an award of $1,000.00 in statutory damages for defendant's violations of the CFDCPA.

### D.   Reasonable Attorneys' Fees

Plaintiff seeks $5,952.00 in attorneys' fees and $395.00 in court costs.  Docket No. 26 at 6.  The FDCPA prescribes that a successful party is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  Because plaintiff has prevailed in this action, she is entitled to recover her reasonable attorneys' fees and costs.

To determine a reasonable fee award, the Court must conduct a lodestar calculation as set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010). A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate. *Hensley*, 461 U.S. at 433. To determine the number of hours expended, the Court reviews attorneys' billing entries to ensure that the attorneys exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan*., 157 F.3d 1243, 1250 (10th Cir. 1998); *id*. at 1251 ("The district court is not bound by the opinions of the parties regarding the reasonableness of the time they spent on the litigation."). Once the Court determines the lodestar amount, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton,* 120 F.3d 1126, 1131 (10th Cir. 1997). A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

### 1. Hourly Rate

Plaintiff requests attorneys' fees calculated at the rate of $325.00 per hour for Craig Thor Kimmel, Docket No. 26-3 at 4, ¶ 18; $250.00 per hour for Amy L. Bennecoff, Docket No. 26-2 at 8, ¶ 30; $200.00 per hour for Jacob U. Ginsburg, Docket No. 26-4 at 3-4 ¶ 16; $150.00 per hour for Caroline Diehl, Docket No. 26-3 at 5, ¶ 23; and paralegal fees at the rate of $110.00 per hour for Jeff Ehrmann, $110.00 per hour for Jason

13

Ryan, $80.00 per hour for Pete Keltz, and $110.00 per hour for Dawn Grob.  Docket No. 26-3 at 5-6, ¶¶ 21-25.

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).  The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  In order to satisfy her burden, plaintiff must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "Unless the subject of the litigation is so unusual or requires such special skills that only an out-of-state lawyer possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Bangerter*, 61 F.3d at 1510.

In support of the rates for the attorneys' fees listed, Mr. Kimmel states that he has been practicing in the area of commercial litigation since 1989.  Docket No. 26-3 at 3.  In addition, Mr. Kimmel states that he has represented thousand of clients and has participated in numerous jury trials and arbitrations.  *Id*.  Mr. Kimmel claims that his billable rate is typically $425.00 per hour, but that he has reduced his rate to $325.00 per hour for work in this District.  *Id*. at 4, ¶ 18.  Mr. Kimmel argues that a rate of

$325.00 is reasonable for an attorney of similar credentials and experience in this

District. *Id*. The Court disagrees.

The weight of authority establishes that the prevailing rate in Colorado is $250.00

per hour for attorneys representing clients in FDCPA cases.[10]  The Court notes that

there has been no showing that the services provided in this case were so "unusual" or

"special" to require out-of-state counsel. *Bangerter*, 61 F.3d at 1510.  Moreover,

$250.00 per hour accords with the Consumer Law Attorney Fee Survey amount for

attorneys in the Western region with ten or more years of experience.  See Ronald L.

Burdge, United States Consumer Law Attorney Fee Survey Report 2010-2011 at 42,

available at www.nclc.org/images/pdf/litigation/fee-survey-report-2010-2011.pdf.

Accordingly, the Court concludes that $250.00 is a reasonable hourly rate in this district

for Mr. Kimmel.

The Court finds that hourly rates of $250.00 for Ms. Bennecoff and $200.00 for

Mr. Ginsburg are also reasonable.  However, a rate of $150.00 is not reasonable for

Ms. Diehl, who is a third year law student.  Docket No. 26-3 at 5, ¶ 23.  Because Ms.

Diehl is not a practicing attorney and does not have significant experience in field of

---

[10] This holding is consistent with other decisions by this Court, *see Howard v. Midland Credit Mgmt., Inc.*, No. 11-cv-03123-PAB-BNB, 2012 WL 4359361 (D. Colo. Sept. 24, 2012), and from this District.  *See, e.g., Nuanes v. NCC Business Servs., Inc.*, No. 12-cv-0228-WJM-MJW, 2012 WL 5464598 (D. Colo. Nov. 9, 2012); *Castro v. First Nat'l Collection Bureau, Inc.*, No. 11-cv-02298-REB-KMT, 2012 WL 4468318 (D. Colo. Sept. 27, 2012); *Skaer v. Nat'l Action Fin. Servs., Inc.*, No. 08-cv-00422-REB-MJW, 2009 WL 724054 (D. Colo. Mar. 18, 2009); *Babeon v. Nat'l Action Fin. Servs., Inc.*, No. 08-cv-00027-JLK-CBS; *Miller v. Cavalry Portfolio Servs., LLC*, No. 08-cv-00772-ZLW-KLM; *Ocker v. Nat'l Action Fin. Servs., Inc.*, No. 08-cv-00421-REB-MJW, 2008 WL 4964772 (D. Colo. Nov. 18, 2008); *Harper v. Phillips & Cohen Assocs., Ltd*, No. 08-cv-01500-REB-KLM, 2009 WL 3059113 (D. Colo. Sept. 21, 2009).

consumer law, the Court finds that $110.00 is a reasonable billing for her services.  *See Williams v. N.Y. City Housing Auth.*, 975 F. Supp. 317, 326 (S.D.N.Y. 1997) (noting that a law student should not be compensated at the same rate as a law school graduate, but rather a "law student's time is compensable in a award of attorney fees at the same rate as a paralegal"); *Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360, 364 (E.D.N.Y. 2008) (same).

The Consumer Law Attorney Fee Survey lists the median paralegal rate for the Western region as between $75.00 and $99.00.  *See* Ronald L. Burdge, United States Consumer Law Attorney Fee Survey Report 2010-2011 at 42, available at www.nclc.org/images/pdf/litigation/fee-survey-report-2010-2011.pdf.  Nevertheless, the Court finds that an hourly rate of $110.00 is reasonable for Mr. Ehrmann, Mr. Ryan, and Ms. Grob given their significant experience as paralegals.  The Court also finds that Mr. Keltz's hourly rate of $80.00 is reasonable because it is within the regional average.

### 2.   Number of Hours

Plaintiff states that the attorneys and paralegals worked on her case for a combined total of 30.2 hours.  Docket No. 26 at 5.

In determining the reasonableness of the hours expended, a court considers several factors.  First, it considers whether the fees pertain to tasks that would ordinally be billed to a client.  *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 n. 4 (1987).  The Supreme Court has found non-compensable "purely clerical or secretarial tasks [which] should not be billed at a paralegal rate, regardless of

who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

Plaintiff must demonstrate that her counsel used "billing judgment" in winnowing down

the hours actually spent to those reasonably expended. *Praseuth v. Rubbermaid, Inc.*,

406 F.3d 1245, 1257 (10th Cir. 2005). "Billing judgment consists of winnowing the

hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at

1250. "In determining what is a reasonable time in which to perform a given task," an

attorney submitting billing entries should consider the following factors: (1) the

complexity of the case; (2) the number of reasonable strategies pursued; (3) the

responses necessitated by the maneuvering of the other side; and (4) "the potential

duplication of services" caused by the presence of multiple attorneys when one would

suffice. *Ramos*, 713 F.2d at 554.

 A court should also take extra care to ensure that an attorney has not included

unjustified charges in his billing statement. *Praseuth*, 406 F.3d at 1257. Ultimately, the

Court's goal is to fix a fee that would be equivalent to what the attorney would

reasonably bill for those same services in an open market and fees will be denied for

excessive, redundant, and otherwise unnecessary expenses. *Ramos*, 713 F.2d at 553.

The burden is on the party requesting fees to prove that its counsel exercised proper

billing judgment. *Case*, 157 F.3d at 1250 ("Counsel for the party claiming the fees has

the burden of proving hours to the district court by submitting meticulous,

contemporaneous time records that reveal, for each lawyer for whom fees are sought,

all hours for which compensation is requested and how those hours were allotted to

specific tasks.").

A review of the time entries in this case reveals that 1.0 hours of plaintiff's fee request is devoted to non-compensable clerical or administrative tasks, namely, e-filing pleadings with the Court. *See* Docket No. 26-1.  In addition, the Court finds that 3.1 hours of the fee request is devoted to duplicative tasks.  Moreover, 0.9 of the fee request is devoted to plaintiff's attorneys fixing mistakes they made in filing pleadings with the Court. *Id*. at 5-6. *See Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 790 F. Supp. 2d 1307, 1316 (D. Kan. 2011) (noting that an attorney may not bill to opposing counsel fees it would not be able to bill to its client).

Accordingly, the Court concludes that the reasonable number of hours spent by plaintiff's attorneys in this case is 19 hours and the reasonable number of hours spent by her paralegals is 6.3 hours.

### 3.  Lodestar Amount

Based on the aforementioned conclusions, the Court finds that the lodestar figure for plaintiff's fee request is $4,837.00.  This fee award is reasonable given the issues presented in this case and it is also adequate to attract competent counsel to similar cases without producing a windfall for attorneys. *Blum*, 465 U.S. at 893-94.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Default Judgment [Docket No. 26] is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that default judgment shall enter against defendant First Integral Recovery, LLC.  It is further

**ORDERED** that plaintiff Telitha Peterson-Hooks shall be awarded $1,000.00 in statutory damages against defendant First Integral Recovery, LLC based on defendant's violations of the FDCPA.  It is further

**ORDERED** that plaintiff Telitha Peterson-Hooks shall be awarded $1,000.00 in statutory damages against defendant First Integral Recovery, LLC based on defendant's violations of the CFDCPA.  It is further

**ORDERED** that plaintiff Telitha Peterson-Hooks shall be awarded $4,837.00 in attorney's fees.  It is further

**ORDERED** that, within 14 days of the entry of judgment, plaintiff Telitha Peterson-Hooks may have her costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed in its entirety.

DATED May 24, 2013.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge